IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TODD CALIC | ) | |
| 5144 Oakridge Drive | ) | CASE NO.: |
| Willoughby, Ohio, 44094 | ) | |
| | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT** |
| CITY OF WICKLIFFE | ) | |
| 28730 Ridge Rd, | ) | (Jury Demand Endorsed Herein) |
| Wickliffe, Ohio, 44092 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| TIM STOPP | ) | |
| 11840 Christian Ave | ) | |
| Concord Township, Ohio, 44077 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| JEREMY IOSUE | ) | |
| 28730 Ridge Rd, | ) | |
| Wickliffe, Ohio, 44092 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Todd Calic, by and through undersigned counsel, states and avers the following for his Complaint against Defendants:

**<u>PARTIES</u>**

1.  Calic is an individual residing in Lake County, Ohio.

2.  Wickliffe ("the City") is a municipal employer located in Lake County, Ohio.

3.  At all times referenced herein, Stopp was the Recreation Director for the City and Calic's direct supervisor.

4. At all times referenced herein, Stopp acted directly or indirectly in the interest of the City in relation to Calic, exercising operational control over Calic's employment, including managing his schedule, approving his timesheets, receiving his leave requests, and participating in disciplinary and/or termination decisions.

5. At all times referenced herein, Iosue was the Law Director for the City.

6. At all times referenced herein, Iosue acted directly or indirectly in the interest of the City in relation to Calic, exercising operational control over Calic's employment, the terms and conditions of his employment, and/or the ultimate decision to terminate his employment.

## JURISDICTION & VENUE

7. Defendants hire citizens of the state of Ohio, contract with companies in Ohio, and own or rent property in Ohio. As such, the exercise of personal jurisdiction over Defendants comports with due process.

8. Calic performed work in this judicial district, was paid by Defendants pursuant to work performed in this district, and/or was hired out of this district.

9. This cause of action arose from or relates to events that occurred in this district, thereby conferring specific jurisdiction over Defendants.

10. This Court is vested with subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action involves federal questions regarding the deprivation of Calic's rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq.

11. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Calic's state law claims under the Ohio Minimum Fair Wage Standards Act, Ohio R.C. § 4111.01 et seq., because those claims derive from a common nucleus of operative facts.

2

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in this district and a substantial part of the events or omissions giving rise to this action occurred in this district.

## STATUTORY COVERAGE

13. At all times referenced herein, the City was a public agency as defined by 29 U.S.C. § 203(x) and constituted an "enterprise engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(C), making it a covered employer under the FLSA.

14. At all times referenced herein, Calic was an "employee" engaged in commerce or in the production of goods for commerce as defined by 29 U.S.C. § 203(e) of the FLSA.

15. At all times referenced herein, Defendants were "employers" within the meaning of the Ohio Minimum Fair Wage Standards Act, Ohio R.C. § 4111.01 et seq., and Article II, Section 34a of the Ohio Constitution.

16. At all times referenced herein, Calic was an "employee" within the meaning of the Ohio Minimum Fair Wage Standards Act, Ohio R.C. § 4111.01 et seq., and Article II, Section 34a of the Ohio Constitution.

17. At all times referenced herein, the City was a public agency and therefore a covered "employer" under the FMLA pursuant to 29 U.S.C. § 2611(4)(A)(iii).

18. At the time of his leave request, Calic had been employed by the City for over twenty-two years, well in excess of twelve months, and had worked substantially more than 1,250 hours during the 12-month period immediately preceding his request, rendering him an 'eligible employee' under 29 U.S.C. § 2611(2).

## FACTUAL ALLEGATIONS

19. Calic began his employment with the City on or about June 1, 2003.

20. Throughout his over twenty-two-year tenure, Calic was officially titled as a Recreation Associate, under which he performed duties as a Program Director for numerous city

3

recreation programs, Assistant Manager, and ultimately Manager of the Green Ridge Golf Course.

21. Calic was classified as a non-exempt employee and was paid on an hourly basis.

22. During his employment, particularly during his time managing the Green Ridge Golf Course, Calic routinely worked in excess of forty (40) hours per workweek, frequently working between forty (40) and eighty (80) hours in a single week.

23. Despite working these hours, the City failed to pay Calic time-and-a-half his regular rate of pay for the hours he worked over forty in a workweek, nor did it properly compensate him with valid compensatory time under the FLSA or Ohio law.

24. Defendants were fully aware of the hours Calic was working. Calic recorded his time, and his direct supervisor, Stopp, consistently reviewed and reviewed Calic's timesheets.

25. Despite Stopp's ongoing approval of Calic's timesheets, the City continued to withhold Calic's lawfully earned overtime compensation.

26. In or around November 2025, Calic engaged in protected activity under the FLSA and Ohio wage laws by explicitly complaining to Stopp about his uncompensated overtime and threatening to pursue legal action if the wage theft was not rectified ("Overtime Complaint").

27. Upon information and belief, Stopp shared Calic's Overtime Complaint with Iosue.

28. Defendants took no action to pay Calic his earned wages following his Overtime Complaint.

29. On February 9, 2026, Calic met with Stopp again to discuss the upcoming golf season.

30. During the February 9, 2026 meeting, Calic again raised the issue of his unpaid overtime with Stopp.

31. Calic told Stopp that "the [overtime] issue needs to get addressed."

32. During the February 9, 2026 meeting, Calic also engaged in protected activity under the FMLA by notifying Stopp that he would need to take intermittent time off from work to care for his elderly mother, who suffers from a serious health condition (lung disease).

33. Although Calic did not specifically state that he was seeking FMLA leave to care for his mother, he was not required to use "magic words" to invoke the protections of the Act. See *Milman v. Fieger & Fieger, P.C.*, 60 F.4th 369 (6th Cir. 2023).

34. Subsequently, Defendants immediately retaliated against Calic for exercising his FMLA, FLSA, and Ohio wage rights.

35. On February 20, 2026—just eleven days after Calic requested FMLA leave and threatened to retain an attorney for his unpaid overtime wages—Defendants issued Calic a written reprimand for alleged "insubordination," "refusal to communicate," and "unauthorized overtime hours."

36. On February 23, 2026—just fourteen days after Calic requested FMLA leave and threatened to retain an attorney for his unpaid overtime wages — Iosue personally informed Calic that the City was terminating his employment for the same reasons identified in the February 20, 2026 written reprimand.

37. During this exit meeting, Calic categorically refuted these allegations to Iosue, specifically pointing out that his overtime hours were not "unauthorized" as they had been consistently approved and signed off by Stopp for years.

38. In response to Calic dismantling the fabricated justifications for his termination, Iosue pivoted, telling Calic that the City "did not need to have a reason" to terminate him.

39. Iosue's active participation in the termination and his shifting rationales demonstrate that he was a decision-maker and/or actively facilitated the retaliatory discharge.

40. Defendants' shifting rationales and the blatant contradiction regarding the "unauthorized" overtime demonstrate that the proffered reasons for Calic's termination are entirely pretextual.

41. Iosue was fully aware that the City owed Calic overtime compensation prior to finalizing the termination.

42. Following Calic's termination, Iosue personally contacted Calic and asked him to provide his calculations for his uncompensated overtime.

43. Calic subsequently provided Iosue with calculations demonstrating five years' worth of owed, uncompensated overtime.

44. Following his sudden termination, Defendants preemptively presented Calic with a severance offer ("Severance Offer").

45. Through the Severance Offer, Defendants attempted to offer Calic a fraction of his owed overtime - only two years worth - in exchange for a complete release of all legal claims against the City and its employees, including Stopp and Iosue.

46. Upon information and belief, the City does not regularly offer severances to terminated employees.

47. Upon information and belief, Iosue participated in and/or made the decision on behalf of the City to offer Calic the Severance Offer.

48. Iosue was fully aware of Calic's protected complaints prior to finalizing the termination, as evidenced by the immediate, preemptive presentation of a Severance Offer explicitly designed to release the exact wage claims Calic had just raised.

49. Defendants only offered Calic the Severance Offer because they knew they had willfully violated the FLSA and Ohio wage laws by failing to pay his earned overtime, and because they knew his termination was unlawfully retaliatory.

50. Calic is owed three years of overtime pay, not two years, as Stopp and the City were fully aware of the overtime Calic was working yet knowingly failed to pay overtime, demonstrating that the violation of the act was willful.

51. Calic is also owed liquidated damages under the FLSA and exemplary damages under Ohio law on his unpaid overtime, but Defendants did not include such compensation in the Severance Offer.

6

52. Calic rejected the Severance Offer.

53. As a direct and proximate result of the Defendants' unlawful conduct, Calic has suffered and will continue to suffer damages.

**COUNT I: FAILURE TO PAY OVERTIME WAGES IN VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 207**
**(Asserted Against the City and Stopp Only)**

54. Calic re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

55. At all times referenced herein, Calic was a non-exempt employee within the meaning of the FLSA.

56. At all times referenced herein, the City was an employer within the meaning of the FLSA.

57. At all times referenced herein, Stopp acted directly or indirectly in the interest of the City in relation to Calic and exercised operational control over material aspects of Calic's employment, including managing Calic's schedule, reviewing and approving Calic's timesheets, knowing the overtime hours Calic worked, and participating in and/or facilitating the City's treatment of those overtime hours for compensation purposes, thereby rendering Stopp an employer within the meaning of the FLSA.

58. The FLSA required that Calic receive overtime compensation at a rate of not less than one and one-half times his regular rate of pay for all hours worked over forty in a workweek.

59. During his employment, Calic regularly worked in excess of forty hours in a workweek.

60. The City failed to pay Calic overtime compensation at one and one-half times his regular rate of pay for all hours worked over forty in a workweek.

61. Stopp knew or had reason to know that Calic was working overtime hours because Calic recorded his time and Stopp reviewed, approved, and signed off on Calic's timesheets.

62. By managing Calic's hours, reviewing and approving Calic's timesheets, knowing that Calic was working overtime hours, and participating in and/or facilitating the City's failure to

compensate those overtime hours at the overtime rate required by law, Stopp acted directly or indirectly in the interest of the City in relation to Calic and is individually liable as an employer under the FLSA.

63. The City did not lawfully compensate Calic for these overtime hours through valid compensatory time under the FLSA.

64. The City's and Stopp's violation of the FLSA was willful.

65. As a direct and proximate result of the City's and Stopp's violations of the FLSA, Calic has suffered damages, including unpaid overtime compensation and an additional equal amount as liquidated damages.

**COUNT II: FAILURE TO PAY OVERTIME WAGES IN VIOLATION OF OHIO LAW, INCLUDING OHIO R.C. CHAPTER 4111 AND ARTICLE II, SECTION 34a OF THE OHIO CONSTITUTION**
**(Asserted Against the City and Stopp Only)**

66. Calic re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

67. At all times referenced herein, Calic was an employee within the meaning of Ohio R.C. Chapter 4111 and Article II, Section 34a of the Ohio Constitution.

68. At all times referenced herein, the City was an employer within the meaning of Ohio R.C. Chapter 4111 and Article II, Section 34a of the Ohio Constitution.

69. At all times referenced herein, Stopp acted directly or indirectly in the interest of the City in relation to Calic and exercised operational control over material aspects of Calic's employment, including managing Calic's schedule, reviewing and approving Calic's timesheets, knowing the overtime hours Calic worked, and participating in and/or facilitating the City's treatment of those overtime hours for compensation purposes, thereby rendering Stopp an employer within the meaning of Ohio law.

8

70. Ohio law required that Calic receive overtime compensation for all hours worked over forty in a workweek.

71. During his employment, Calic regularly worked in excess of forty hours in a workweek.

72. The City failed to pay Calic the overtime compensation required by Ohio law for all hours he worked over forty in a workweek.

73. Stopp knew or had reason to know that Calic was working overtime hours because Calic recorded his time and Stopp reviewed, approved, and signed off on Calic's timesheets.

74. By managing Calic's hours, reviewing and approving Calic's timesheets, knowing that Calic was working overtime hours, and participating in and/or facilitating the City's failure to compensate those overtime hours as required by Ohio law, Stopp acted directly or indirectly in the interest of the City in relation to Calic and is individually liable as an employer under Ohio law.

75. The City did not lawfully compensate Calic for these overtime hours through valid compensatory time or other lawful means recognized by Ohio law.

76. As a direct and proximate result of the City's and Stopp's violation of Ohio law, Calic has suffered damages, including unpaid overtime compensation, statutory damages where applicable, prejudgment interest, attorneys' fees, and costs.

### COUNT III: RETALIATION IN VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 215(a)(3) (Asserted Against all Defendants)

77. Calic re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

78. The FLSA prohibits any person from discharging or otherwise discriminating against an employee because that employee filed a complaint or otherwise asserted rights protected by the FLSA.

79. Calic engaged in protected activity under the FLSA when he complained to Stopp in or around November 2025 about his unpaid overtime and again on February 9, 2026, when he complained that the issue needed to be addressed and stated that he would contact an attorney if it was not.

80. At all times referenced herein, Stopp and Iosue were "employers" and/or persons acting directly or indirectly in the interest of the City in relation to Calic within the meaning of 29 U.S.C. § 203(d), because they exercised operational control over material aspects of Calic's employment and personally participated in the retaliatory discipline and termination decisions.

81. The FLSA's definition of "employer" contains no carve-out excluding individual public employees from liability for retaliation, and this Court has recognized that such a retaliation claim may proceed against individual public employees. See *Lorimer v. Mayfield City Schs.*, No. 1:23-cv-1695 (N.D. Ohio Aug. 21, 2024).

82. The City, Stopp, and Iosue knew of Calic's protected activity.

83. Shortly after Calic engaged in this protected activity, Defendants subjected him to materially adverse action, including issuing him a written reprimand on February 20, 2026, and terminating his employment on February 23, 2026.

84. The temporal proximity between Calic's protected activity and Defendants' adverse actions, together with Defendants' shifting and pretextual reasons for the reprimand and termination, support a causal connection between Calic's protected activity and Defendants' adverse actions.

85. Defendants disciplined and terminated Calic because he engaged in protected activity under the FLSA.

86. As a direct and proximate result of Defendants' unlawful retaliation, Calic has suffered damages, including lost wages, lost benefits, other compensatory damages, liquidated damages where recoverable, equitable relief, attorneys' fees, and costs.

**COUNT IV: RETALIATION IN VIOLATION OF OHIO LAW, INCLUDING ARTICLE II, SECTION 34a OF THE OHIO CONSTITUTION AND OHIO R.C. § 4111.14**
**(Asserted Against all Defendants)**

87. Calic re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

88. Article II, Section 34a of the Ohio Constitution prohibits an employer from discharging or otherwise discriminating or retaliating against an employee for exercising rights protected by that section or by laws implementing it.

89. Article II, Section 34a defines "employer" to have the same meaning as under the FLSA and further provides that the term includes the state and every political subdivision.

90. Calic engaged in protected activity under Ohio law when he complained to Stopp about his unpaid overtime and threatened to retain counsel if the issue was not addressed.

91. At all times referenced herein, the City, Stopp, and Iosue were employers and/or persons subject to liability under Article II, Section 34a and Ohio R.C. § 4111.14 because they acted directly or indirectly in the interest of the City in relation to Calic and personally participated in the retaliatory discipline and termination decisions.

92. In *Lorimer v. Mayfield City Schs.*, No. 1:23-cv-1695 (N.D. Ohio Aug. 21, 2024), this Court held that, absent clear binding precedent to the contrary, an Article II, Section 34a retaliation claim could proceed against individual public employees and rejected the argument that the FLSA-based definition of employer excludes employees of a public agency.

93. The City, Stopp, and Iosue knew of Calic's protected activity.

94. Shortly after Calic engaged in this protected activity, Defendants issued Calic a written reprimand and terminated his employment.

11

95. Defendants disciplined and terminated Calic because he engaged in protected activity under Ohio's wage laws.

96. As a direct and proximate result of Defendants' unlawful retaliation, Calic has suffered damages, including lost wages, lost benefits, other compensatory damages, statutory damages where available, attorneys' fees, costs, and all other relief permitted by law.

**COUNT V: RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT**
**(Asserted Against the City Only)**

97. Calic re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

98. The FMLA prohibits an employer from discharging or otherwise discriminating against an employee because the employee exercised or attempted to exercise rights protected by the FMLA.

99. Calic engaged in protected activity under the FMLA when he notified the City on February 9, 2026, that he needed intermittent time off to care for his mother, who suffered from a serious health condition.

100. The City knew that Calic had engaged in protected activity under the FMLA.

101. Shortly after Calic engaged in this protected activity, the City subjected him to materially adverse action by issuing him a written reprimand on February 20, 2026, and terminating his employment on February 23, 2026.

102. The close temporal proximity between Calic's request for protected leave and the City's adverse actions, together with the shifting and pretextual reasons given for the discipline and termination, support a causal connection between Calic's protected activity and the City's adverse actions.

12

103. The City disciplined and terminated Calic because he exercised or attempted to exercise rights protected by the FMLA.

104. As a direct and proximate result of the City's unlawful retaliation, Calic has suffered damages, including lost wages, lost benefits, other compensatory damages, interest, liquidated damages, equitable relief, attorneys' fees, and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Todd Calic requests that this Court enter judgment in his favor and against Defendants, as applicable to the claims asserted against each of them, and award the following relief:

(a) All unpaid overtime compensation due, from April 14, 2023 through Calic's termination under the Fair Labor Standards Act against the City and Stopp, including the full amount of overtime compensation required by 29 U.S.C. § 207, less any amount actually paid;

(b) An additional and equal amount as liquidated damages under 29 U.S.C. § 216(b) against the City and Stopp on Count I;

(c) All unpaid overtime compensation due, from April 14, 2024 through Calic's termination under Ohio law against the City and Stopp, including the full amount of the overtime wage rate to which Calic was entitled under Ohio R.C. § 4111.03 and Ohio R.C. § 4111.10, less any amount actually paid;

(d) All legal and equitable relief available under 29 U.S.C. § 216(b) against the City, Stopp, and Iosue on Count III, including lost wages, reinstatement and/or front pay in lieu of reinstatement, and an additional equal amount as liquidated damages;

(e) All monetary and equitable relief available under Article II, Section 34a of the Ohio Constitution and Ohio R.C. § 4111.14 against the City, Stopp, and Iosue on Count IV, including compensatory damages, back pay, front pay and/or reinstatement, and all other relief sufficient to compensate Calic and deter future violations;

(f) All damages and equitable relief available under the Family and Medical Leave Act against the City on Count V, including all wages, salary, employment benefits, or other compensation denied or lost by reason of the violation, or any actual monetary losses sustained as a direct result of the violation, together with interest thereon, liquidated damages, and appropriate equitable relief including reinstatement and/or front pay in lieu of reinstatement;

(g) Prejudgment interest and post-judgment interest as provided by law;

(h) Reasonable attorneys' fees, expert witness fees where recoverable, and costs of this action; and

(i)  Such other and further legal or equitable relief as this Court deems just and proper.

<div style="margin-left: 50%;">

Respectfully submitted,

*/s/Chris P. Wido*
Chris Wido (0090441)
**SPITZ, THE EMPLOYEE'S ATTORNEY**
3 Summit Park Drive, Suite 200
Independence, Ohio 44131
Phone: (216) 364-1330
Fax:    (216) 291-5744
Email: Chris.Wido@Spitzlawfirm.com

*Attorney for Plaintiff Todd Calic*

</div>

## JURY DEMAND

Plaintiff Todd Calic demands a trial by jury by the maximum number of jurors permitted.

<div style="margin-left: 50%;">

*/s/Chris P. Wido*
Chris P. Wido (0090441)
**SPITZ, THE EMPLOYEE'S ATTORNEY**

</div>

14